Garrett Scott McKean
3589 Wells Rd. Unit 40
Blythe, Ca 92225
Telephone (760) 989-1180
GarrettSMcKean@Gmail.com

Plaintiff in Pro Per

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Garrett Scott McKean<br>Plaintiff,<br><br>vs.<br>CITY OF BLYTHE;<br>DETECTIVE MCCORMICK,<br>IN HER OFFICIAL AND<br>INDIVIDUAL CAPACITY; OFFICER<br>IBARRA, IN HER INDIVIDUAL AND<br>OFFICIAL CAPACITY; OFFICER<br>OROZCO, IN HIS INDIVIDUAL<br>AND OFFICIAL CAPACITY; POLICE<br>CHIEF GARTH DALE, IN HIS<br>OFFICIAL CAPACITY;<br>DISPATCHER SOTO, IN HER<br>INDIVIDUAL AND OFFICIAL<br>CAPACITY; DOES 1–10,<br>INCLUSIVE | Case No.: 5:25-cv-00935-HDV-GJS<br><br>SECOND AMENDED COMPLAINT FOR DAMAGES<br>) COMPLAINT FOR DAMAGES FOR<br>) VIOLATION OF FEDERAL<br>) CONSTITUTIONAL RIGHTS UNDER<br>) COLOR OF STATE LAW<br>) 42 U.S.C. § 1983: FEDERAL<br>) CONSTITUTIONAL CLAIMS FOR<br>) VIOLATION OF FIRST, FOURTH,<br>) AND FOURTEENTH AMENDMENTS<br>) UNLAWFUL SEARCH & SEIZURE,<br>) RETALIATORY ARREST,<br>) SUPPRESSION OF EVIDENCE<br>) VIOLATION OF CALIFORNIA<br>) CONSTITUTIONAL RIGHTS<br>) STATE TORT CLAIMS UNDER CAL.<br>) CIVIL CODE § 52.1, BATTERY,<br>) FALSE IMPRISONMENT,<br>) DEFAMATION, NEGLIGENCE,<br>) INTENTIONAL INFLICTION OF<br>) EMOTIONAL DISTRESS |

**COMES NOW** plaintiff Garrett Scott McKean and shows this honorable court the following:

## SECOND AMENDED COMPLAINT FOR DAMAGES

(Civil Rights Violations – 42 U.S.C. § 1983; First, Fourth, and Fourteenth Amendments; California Civil Code § 52.1 (Bane Act); False Imprisonment; Negligence; Defamation (Libel and Slander); Intentional Infliction of Emotional Distress; Monell Liability)

## PARTIES

Plaintiff GARRETT SCOTT MCKEAN is an individual residing in Riverside County, California. He brings this action under 42 U.S.C. § 1983.

Defendant CITY OF BLYTHE is a municipal corporation and is sued as a public entity under *Monell* for its policies, customs, and practices.

Defendant DETECTIVE KEVIN MCCORMICK is sued in his individual and official capacity for actions taken under color of law.

Defendant OFFICER NATHALIE IBARRA is sued in her official and individual capacity for actions taken under color of law.

Defendant OFFICER MICHAEL OROZCO is sued in his official and individual capacity for actions taken under color of law.

Defendant SUPERVISOR GARTH DALE is sued in his official capacity for actions taken under color of law.

Defendant DISPATCHER SHELLY SOTO is sued in her official and individual capacity for actions taken under color of law.

**INTRODUCTION**

1.      This is a civil rights action for damages brought pursuant to 42 U.S.C. § 1983 and California law, arising from a pattern of retaliatory and unconstitutional conduct by the City of Blythe and its police officers, committed under color of state law.

2.      Plaintiff Garrett SCOTT McKean alleges that Defendants engaged in a campaign of targeted harassment, false arrest, warrantless searches and seizures, fabrication and suppression of exculpatory evidence, and defamation, in retaliation for Plaintiff's constitutionally protected speech and political activity.

3.      Defendants' conduct violated Plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution, the California Constitution, and statutory protections under California law, causing Plaintiff substantial emotional distress, reputational damage, loss of liberty, and other compensable harm.

4.      The retaliation escalated after Plaintiff began publicly criticizing the Blythe Police Department before and during his 2024 city council campaign. Plaintiff filed formal complaints on November 15th, 2024 and exposed misconduct involving senior officers. In response, officers initiated an ongoing campaign to silence, discredit, and punish him — including false criminal charges, unlawful detention, unlawful searches and seizures, a warrantless battery during a medical "pulse check," suppression of exculpatory evidence, and coordinated reputational attacks on social media and in the press.

## JURISDICTIONAL ALLEGATIONS

5.  This action is brought under 42 U.S.C. § 1983. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(3) (civil rights jurisdiction).

6.  Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), as all events and omissions giving rise to the claims occurred in the City of Blythe, County of Riverside, State of California, which lies within the territorial jurisdiction of the United States District Court for the Central District of California.

7.  Plaintiff's state law claims arise out of the same nucleus of operative facts as the federal constitutional violations alleged herein. Accordingly, this Court has

supplemental jurisdiction over Plaintiff's California state law claims under 28 U.S.C. § 1367 and pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966).

8.  California Government Claims Act Compliance Plaintiff has complied with the claim presentation requirements of the California Government Code §§ 910 et seq. Plaintiff timely submitted a government claim to the City of Blythe on or about April 14, 2025, relating to the events described in this complaint. The City did not respond within the statutory 45-day period, and the claim was therefore deemed rejected by operation of law. This complaint is timely filed within six months of such rejection, pursuant to Government Code § 945.6(a)(1).

## **GENERAL ALLEGATIONS**

9.  Plaintiff Garrett SCOTT McKean is a lifelong resident of Blythe, California, a former city council candidate, and a community advocate.

10. Beginning in or around early 2024 and continuing through 2025, Plaintiff became the target of a pattern of retaliatory conduct carried out by members of the Blythe Police Department and other City officials in response to his vocal criticism of City leadership and advocacy for police accountability.

11.    In or around September and October 2024, at least three individuals affiliated with the City—including the Chief of Police and Defendant Kevin McCormick—contacted Plaintiff's employer. These individuals either called or visited in person and brought up Plaintiff during his campaign in an apparent effort to apply pressure and undermine his candidacy.

12.    On November 15, 2024, Plaintiff submitted two formal complaints using the City of Blythe's official online complaint form. These complaints described misconduct by Defendant officers and detailed violations of Plaintiff's rights. Despite receiving electronic confirmation of submission, the City later claimed between approximately December 20, 2024 and January 2, 2025 that these complaints were never received.

13.    On December 17, 2024, Plaintiff was involved in a minor traffic collision near Lovekin Blvd. The other driver exchanged information with Plaintiff and then left the scene. Shortly after, Officer Valdivia responded. Despite acknowledging that Plaintiff had the legal right to decline a field sobriety test, Valdivia framed Plaintiff as uncooperative. Additional officers, including Defendant Kevin McCormick and Defendant Nathalie Ibarra—who were not involved in the initial stop and had no time to properly assess the situation—arrived and escalated the encounter.

14.   Defendant McCormick conducted a non-consensual and unlawful search of
      Plaintiff's person under the guise of a "pulse check," amounting to battery and a
      violation of Plaintiff's bodily autonomy and Fourth Amendment rights.
      McCormick also seized Plaintiff's personal body-worn camera without a warrant
      and threatened to suspend Plaintiff's driver's license if he did not comply with
      an optional field sobriety test.

15.   Nearly every on-duty officer—approximately 7 to 9 officers—responded to the
      traffic scene despite it being a non-incident. Plaintiff was placed in handcuffs
      only after the additional officers arrived, demonstrating a coordinated escalation
      and show of force that made clear the encounter was not about public safety, but
      about Plaintiff's identity and political expression.

16.   Following the traffic incident, Plaintiff made multiple follow-up requests for
      records and video evidence. On January 8, 2025, Plaintiff's attorney submitted a
      formal letter to the City requesting the traffic report. The City failed to respond,
      stonewalling the inquiry and denying access to critical evidence.

17.   After Plaintiff submitted a CPRA request for the December 17, 2024 traffic
      report and related footage, the City delayed disclosure and later falsely stated
      that no prior complaints had been received. Plaintiff followed up with the City
      Manager, who denied knowledge of any complaints, despite internal records and
      routing systems confirming their submission.

18. In March 2025, officers from the Blythe Police Department fabricated probable cause to arrest Plaintiff on baseless domestic violence allegations. The alleged victim never stated that Plaintiff hit her and provided no statement supporting any charge. Instead, officers relied on a month-old minor knee scrape with no verified cause, no contemporaneous witness statements, and no recorded accusation. Plaintiff was arrested at work on March 10, 2025—two days after the alleged incident—without lawful justification, probable cause, or a victim complaint.

19. Defendant Officers, including Orozco and Ibarra, failed to preserve and disclose key exculpatory material, including statements made by the alleged victim that contradicted the charges. Despite Plaintiff's repeated efforts to obtain evidence, officers failed to document or release critical witness accounts and recordings. These omissions hindered Plaintiff's ability to defend against the charges and raise concerns under Brady v. Maryland.

20. On March 11, 2025, one day after Plaintiff's arrest, the Blythe Police Department published his mugshot to social media platforms alongside prejudicial and misleading commentary. This was done without a conviction, without any legitimate public safety justification, and prior to any meaningful judicial review. The timing and presentation strongly suggest the post was

intended to inflict reputational damage, retaliate for Plaintiff's prior advocacy, and influence public opinion through state-sponsored defamation.

21.   On March 11, 2025, defamatory and misleading allegations against Plaintiff—based on the fabricated charges—were circulated widely online. On information and belief, City employees coordinated with members of local media and Facebook groups to further distribute the claims. The Palo Verde Valley Times subsequently published the story without a paywall, despite their normal practice, amplifying the reputational harm.

22.   At no point was Plaintiff ever provided due process, as investigations were conducted in secret, complaints were rerouted or ignored, and records regarding the officers' misconduct were unlawfully withheld using blanket exemptions under the California Public Records Act (CPRA).

23.   These acts and omissions demonstrate a coordinated effort by City officials to retaliate against Plaintiff for his protected speech, chill his political participation, and shield the misconduct of officers from public scrutiny. The pattern of conduct described herein supports Monell liability against the City of Blythe.


**<u>FIRST CAUSE OF ACTION</u>**

(42 U.S.C. §1983 – Fourth Amendment – Unlawful Search, Seizure, and Arrest)

23.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

24.    Defendants, acting under color of law, deprived Plaintiff of rights secured by the Fourth Amendment to the U.S. Constitution.

25.    On March 10, 2025, Plaintiff was arrested without a valid warrant, probable cause, or any lawful justification. The arrest occurred two days after the alleged incident, despite there being no contemporaneous witness statements, victim complaint, verified injury, or ongoing danger.

26.    Defendant Orozco arrested Plaintiff  without legal basis, and the arrest itself constituted an unlawful seizure under the Fourth Amendment.

27.    As a result of this unlawful arrest, officers seized Plaintiff's personal phone and other property. Plaintiff's phone was accessed before a warrant was issued, and the later-issued warrant was facially invalid and served only to retroactively justify the unconstitutional seizure.

28.    Defendant McCormick also physically touched Plaintiff under the guise of a "pulse check" and attempted to conduct further testing, despite Plaintiff's explicit verbal refusal. These actions were performed without consent, legal justification, or medical necessity.

29.    These actions were unreasonable, excessive, and unconstitutional under clearly established law, including Riley v. California.

30.    As a direct and proximate result of these actions, Plaintiff suffered harm including loss of privacy, humiliation, emotional distress, and damage to his reputation.

## SECOND CAUSE OF ACTION

(42 U.S.C. §1983 – First Amendment – Retaliation)

32.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

33.    Plaintiff engaged in protected speech and conduct, including publicly criticizing the Blythe Police Department, running for public office in 2024, and submitting formal complaints through official city channels.

34.    In retaliation for this protected activity, Defendants engaged in a pattern of adverse conduct designed to chill Plaintiff's speech and punish him for his public criticism.

35.    Retaliatory acts included, but were not limited to: contacting Plaintiff's employer during the 2024 campaign to exert pressure; mishandling or disregarding formal complaints submitted in November 2024; arresting Plaintiff without probable cause; seizing Plaintiff's personal phone and body camera without legal justification; and disseminating Plaintiff's mugshot on official social media platforms.

36.    Defendants' actions were not isolated, but part of a coordinated and escalating response to Plaintiff's constitutionally protected conduct.

37.    These actions would deter a person of ordinary firmness from continuing to
engage in protected First Amendment activity.

38.    The retaliatory conduct was substantially motivated by Plaintiff's public
criticism of the police department, campaign activity, and exercise of his constitutional
rights.

39.    As a direct and proximate result, Plaintiff suffered lost income, reputational
harm, emotional distress, and was chilled from further political participation and public
speech.


### THIRD CAUSE OF ACTION

(42 U.S.C. §1983 – Fourteenth Amendment – Denial of Due Process)

40.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

41.    Defendants, acting under color of law, deprived Plaintiff of liberty and
property interests without due process of law, in violation of the Fourteenth Amendment
to the U.S. Constitution.

42.    On March 11, 2025, Plaintiff's mugshot was posted on the Blythe Police
Department's official Facebook page, alongside unsubstantiated charges. The post was
widely disseminated and later republished by the Palo Verde Times without a

paywall—an unusual departure from its standard practice—magnifying the reputational damage before Plaintiff had any opportunity to contest the allegations.

43.     Plaintiff was denied fair process to challenge the allegations, as formal complaints submitted by Plaintiff through official channels were rerouted or disregarded entirely.

44.     Officers involved in the investigation, including Defendants Ibarra, Orozco, and Manning, made false or misleading statements in their reports, failed to document key evidence, and acted in concert to fabricate the appearance of probable cause. Upon information and belief, Defendants manipulated or backdated Computer Aided Dispatch (CAD) logs in an effort to conceal the timing of communications, obscure investigatory steps, and bolster a fabricated narrative. This falsification of official records further deprived Plaintiff of a fair opportunity to challenge the allegations against him and obstructed access to potentially exculpatory evidence.

45.     The City of Blythe maintains a custom, policy, and practice of obstructing complaint procedures, enabling retaliatory conduct, and shielding officers from accountability. This institutional behavior denied Plaintiff access to redress mechanisms and tainted the legal process at every stage.

46.    As a direct and proximate result of these actions, Plaintiff suffered a deprivation of liberty, reputational injury, emotional distress, and prolonged exposure to criminal prosecution without the procedural safeguards required by due process.

## FOURTH CAUSE OF ACTION

(California Civil Code §52.1 – Bane Act)

47.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

48.    Defendants, through threats, intimidation, and coercion, interfered with Plaintiff's exercise and enjoyment of rights secured by the Constitution and laws of the United States and California.

49.    Defendant McCormick threatened Plaintiff with arrest and license suspension if he did not comply with unlawful testing, despite Plaintiff's clear invocation of his rights.

50.    Defendant Ibarra attempted to coerce the alleged victim into making incriminating statements, including insinuating she was a "battered woman" and stating, "They don't like McKean," demonstrating both bias and retaliatory motive.

51.    Defendant Soto, while acting in a position of public trust, posted Plaintiff's mugshot online within hours of the arrest as a means of intimidation and reputational harm.

52.     Defendants unlawfully detained Plaintiff, seized his property without valid

legal authority, and repeatedly ignored his verbal objections—all actions designed to

punish, intimidate, and suppress Plaintiff's exercise of constitutional rights.

53.     These acts were excessive, unlawful, and carried out with deliberate intent to

chill the exercise of Plaintiff's civil rights and retaliate against his political activity.

54.     As a direct and proximate result, Plaintiff suffered emotional distress,

economic loss, and fear of future retaliation.


## FIFTH CAUSE OF ACTION

### (Defamation — California State Law)

55.     Plaintiff realleges and incorporates by reference all preceding paragraphs.

56.     On or about March 11, 2025, Dispatcher Shelly Soto, while acting in the

scope of her employment with the Blythe Police Department, caused Plaintiff's mugshot

and arrest allegations to be posted publicly on the department's official Facebook page.

57.     The post falsely implied that Plaintiff had committed a violent crime and was

guilty of domestic violence, despite the absence of probable cause, any victim

statement, or verified evidence supporting such charges.

58.     These statements were made and published prior to Plaintiff being formally charged or afforded an opportunity to respond, and were intended to provoke public judgment and condemnation.

59.     The publication was widely viewed by members of the public, including employers, colleagues, and residents of Blythe, resulting in Plaintiff's humiliation, reputational harm, and financial injury.

60.     The statements were false, made with actual malice, and intended to damage Plaintiff's credibility and reputation within the community.

61.     As a direct and proximate result of the defamatory publication, Plaintiff lost employment opportunities, suffered reputational injury and emotional distress, and was subjected to public ridicule and scrutiny.

## SIXTH CAUSE OF ACTION

(Negligence — California State Law)

62.     Plaintiff realleges and incorporates by reference all preceding paragraphs.

63.     Defendants owed Plaintiff a duty of care in their roles as public officials, including the duty to uphold constitutional protections, ensure lawful procedures, and safeguard individual rights.

64.    Defendants breached that duty through acts and omissions including, but not limited to, initiating a baseless arrest, spreading false and defamatory information, mishandling public complaints, and failing to preserve or consider exculpatory evidence.

65.    The City of Blythe further breached its duties through a failure to train, supervise, and discipline its officers, despite prior incidents and lawsuits that highlighted similar misconduct.

66.    Defendants' conduct was negligent, unreasonable, and inconsistent with the standards of care required of public officials.

67.    As a direct and proximate result of Defendants' negligence, Plaintiff suffered economic loss, reputational harm, emotional distress, and violations of his constitutional rights.

## SEVENTH CAUSE OF ACTION

### (False Imprisonment — California State Law)

68.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

69.    On or about March 10, 2025, Plaintiff was detained, arrested, and deprived of his liberty by Officer Orozco and other Defendants without a warrant, probable cause, or valid legal justification.

70.    Plaintiff did not consent to the detention or arrest, and no exigent circumstances existed to justify the seizure of his person.

71.    The arrest was predicated on knowingly false allegations, including fabricated police narratives and postdated or manipulated CAD logs that distorted the actual sequence of events.

72.    Plaintiff remained in custody for an extended period and suffered reputational, emotional, and economic harm as a result of the unlawful detention.

73.    Additionally, the Palo Verde Valley Times republished Plaintiff's mugshot and arrest details without a paywall—contrary to its usual practices—thereby amplifying the false narrative and intensifying the public shaming.

74.    As a direct and proximate result of Defendants' actions, Plaintiff experienced emotional distress, financial harm, and damage to his reputation.


**EIGHTH CAUSE OF ACTION**

(42 U.S.C. §1983 — Monell Claim — Failure to Train, Supervise, and Discipline)

75.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

76.    Defendant City of Blythe is a municipal entity responsible for the actions and oversight of its police department, including the hiring, training, supervision, and discipline of its officers and staff.

77.     The City of Blythe maintained and condoned policies, customs, and practices that resulted in repeated constitutional violations, including unlawful searches, fabricated probable cause, suppression of exculpatory evidence, and retaliation against political dissent.

78.     The City failed to adequately train officers in key areas such as Fourth Amendment compliance, investigative integrity, handling citizen complaints, and avoiding retaliatory or politically biased enforcement actions.

79.     The City also failed to supervise or discipline employees who engaged in known misconduct, including Defendants McCormick, Ibarra, Orozco, Soto, and Dale, despite the presence of complaints, lawsuits, and obvious red flags.

80.     This deliberate indifference created an environment where misconduct flourished without consequence, and where officers felt emboldened to violate rights, particularly when targeting political opponents or critics of the department.

81.     The City's failure to implement and enforce proper accountability measures—including adequate complaint tracking, internal investigations, and public transparency—was a moving force behind the constitutional violations suffered by Plaintiff.

82.     As a direct and proximate result of the City's unconstitutional policies, customs, and failures, Plaintiff suffered harm including unlawful arrest, seizure of property, reputational injury, emotional distress, and economic loss.

SECOND AMENDED COMPLAINT FOR DAMAGES

83.     The City of Blythe, along with agencies including Escondido and Orange County, engaged in a pattern of CPRA suppression to conceal officer misconduct directly tied to Plaintiff's arrest and constitutional claims. Despite confirming the existence of responsive records regarding Detective Kevin McCormick, each agency denied access using exemptions that were improperly invoked under SB 1421. These denials were not isolated errors — they formed a coordinated policy of non-disclosure designed to obstruct public accountability and shield the City from liability. The suppression directly contributed to Plaintiff's harm by concealing prior misconduct, undermining his ability to challenge credibility, and enabling the retaliatory conduct alleged. This systemic misuse of exemptions constitutes an unconstitutional policy, practice, and custom under *Monell*.

84.     After Plaintiff issued a formal litigation hold and spoliation notice to the City of Blythe on or about April 14, 2025, Defendant Officer Kevin McCormick began appearing at Plaintiff's workplace for multiple consecutive days. McCormick stood outside the building and stared at Plaintiff as he arrived for work, creating an atmosphere of intimidation. On at least one occasion, McCormick initiated a traffic stop in the parking lot less than five feet from Plaintiff's parked vehicle. These encounters lacked any legitimate investigative purpose and appeared intended to harass, monitor, or provoke Plaintiff following notice of litigation. This conduct demonstrates ongoing

retaliation and further supports Monell liability based on the City's failure to prevent, supervise, or discipline retaliatory behavior by its officers.

**WHEREFORE**, Plaintiff respectfully prays for judgment against all Defendants as follows:

a) For compensatory damages in an amount in excess of $30,000,000.00

b) For a judgment against all Defendants, save Defendant CITY, for punitive damages in an amount in excess of $10,000,000.00;

c) For an award of reasonable attorney's fees and costs (if represented);

d) For a trial by jury on all issues so triable;

e) For such other and further relief as this honorable Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

/s/ Garrett Scott McKean

Garrett Scott McKean