Garrett S. McKean
3589 Wells Rd. Unit 40
Blythe, Ca 92225
Telephone (760) 989-1180
GarrettSMcKean@Gmail.com

Plaintiff in Pro Per

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Garrett S. McKean | Case No.: 5:25-cv-00935-HDV-GJS |
|---|---|
| Plaintiff, | |
| | PLAINTIFF'S OPPOSITION TO |
| Vs | DEFENDANT CITY OF BLYTHE'S EX |
| | PARTE APPLICATION TO STAY |
| City of Blythe, et al. | PROCEEDINGS |
| Defendants. | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT CITY OF BLYTHE'S EX PARTE APPLICATION TO STAY PROCEEDINGS**

**I. INTRODUCTION**

1.    Plaintiff Garrett Scott McKean submits this Opposition to Defendant City of Blythe's Ex Parte Application to Stay Proceedings, filed on July 17, 2025 (Dkt. 30). The Application is procedurally improper, factually misleading, and legally unfounded.

2.    Within 24 hours of Plaintiff's service of the Second Amended Complaint, before Plaintiff had completed service on all named Defendants and before any response was due, defense counsel demanded a stipulation, ignored Plaintiff's stated intent to engage in a good faith meet and confer, and filed this Application on less than a day's notice.

3.    Plaintiff does not categorically oppose a stay. In fact, Plaintiff was willing to discuss a temporary stay conditioned on basic assurances regarding evidence preservation and justification for the continued seizure of Plaintiff's personal phone, a device central to this litigation and believed to contain Brady material. Rather than meaningfully engage, defense counsel issued an ultimatum and filed ex parte, invoking urgency where none exists.

4.    This Application is a tactical maneuver to avoid discovery, freeze litigation before key defendants are even on the docket, and shield the City of Blythe from early accountability. It fails to meet the requirements of Local Rules 7.3 and 7.19, and should be denied on procedural and

substantive grounds. Alternatively, if the Court is inclined to consider a limited stay, Plaintiff respectfully requests that the stay be conditioned on Defendant's return of Plaintiff's seized phone or a detailed justification for its continued retention, along with preservation assurances for all potentially exculpatory materials.

5.  Wallace v. Kato Does Not Mandate a Blanket Stay While *Wallace v. Kato*, 549 U.S. 384 (2007), holds that a district court may stay a § 1983 action when related criminal proceedings are pending, such a stay is not automatic. Rather, it is a prudential tool subject to the Court's discretion. Here, unlike in *Wallace*, Plaintiff's civil claims raise broader systemic issues, including Monell liability and retaliatory misconduct predating the arrest matters which will not be resolved by the outcome of the state criminal case. Moreover, Plaintiff's claims are based in part on conduct wholly external to the alleged offense, including pretextual surveillance, coerced witness statements, and suppression of complaint records none of which would be resolved by a conviction or acquittal in the criminal case.

**II. RELEVANT FACTUAL BACKGROUND**

6.  Defendant City of Blythe was personally served with the Second Amended Complaint at approximately 3:08 PM on July 15, 2025. Less than 24 hours later, on July 16, 2025, defense counsel Allen Christiansen sent Plaintiff an email demanding that Plaintiff sign a stipulation to stay the case and threatening to file an ex parte motion if Plaintiff did not comply.

7.  That same night, Plaintiff responded in writing, confirming agreement to dismiss the official capacity claims.

8.  On the morning of July 17, 2025, at approximately 8:52 AM, Plaintiff emailed defense counsel to explain that he was unavailable to take a call that morning due to work obligations but would follow up by email later that evening with a proposed time to meet and confer. Plaintiff indicated that he intended to raise several concerns related to the proposed stay, including an unresolved issue regarding the preservation of key evidence such as his personal phone, which remains in the custody of the Blythe Police Department. Plaintiff emphasized that Local Rule 7.3 applies to any motion, including a motion to stay, and that reframing the motion as exempt under Local Rule 7.19 undermines both the purpose of the rule and procedural fairness.

9.   At approximately 9:54 AM, defense counsel left a voicemail reiterating his threat to file the motion without further discussion. Less than an hour later, at 10:19 AM, he emailed Plaintiff again to assert that the proposed stay was not subject to the meet and confer requirement under Local Rule 7.3.

10.  At approximately 10:36 AM, Plaintiff sent an additional email clarifying that any prior remark about ex parte proceedings was made in response to defense counsel's tone and was not a waiver of the meet and confer requirement. Plaintiff reiterated that he was preparing a written response outlining concerns with the proposed stay and intended to follow up later that day with a proposed time to confer.

11.  Plaintiff followed up again at 11:08 AM to clarify that he was not refusing to meet and confer, but merely asking for a reasonable window of time due to work obligations. Plaintiff explained that as a pro se litigant working full time in a public-facing role, he was unable to take confidential legal calls during regular business hours. He reiterated that he would follow up shortly with proposed times for a call and noted that the pressure to immediately sign stipulations without adequate time to review or respond fairly was itself improper.

12. Despite Plaintiff's responsive emails indicating cooperation, defense counsel later claimed Plaintiff had not signed anything and, in a subsequent message sent at 10:57 AM on July 17, 2025, accused Plaintiff of failing to commit to any stipulations or provide a specific time to meet and confer. He also criticized Plaintiff for indicating he would follow up after work hours despite knowing Plaintiff was employed and responding during breaks. Notably, defense counsel did not provide a stipulation to dismiss parties until the morning of July 17, 2025, and ignored Plaintiff's explanation that he was at work and would follow up later that evening.

13. At the time of filing, service was still incomplete for multiple named Defendants. Officer Ibarra was served at approximately 9:50 AM on July 16, 2025, and Plaintiff served the remaining defendants shortly thereafter. Plaintiff has not yet received completed proof of service from the process server for some parties. Plaintiff had made no refusal to confer. No phone call ever occurred. No effort was made to allow Plaintiff to review the stipulation language or discuss alternative terms. The Application was filed not to preserve judicial economy, but to rush the litigation into a freeze before Plaintiff could complete service, begin discovery, or secure the return of unlawfully seized evidence.

14. This timeline alone renders the Application defective.

15. The complaint alleges ongoing and broad-ranging misconduct that
    began before Plaintiff's arrest and continues long after, including
    Monell violations, retaliation for protected speech, evidence
    suppression, and surveillance practices. The facts do not merely
    center on whether probable cause existed on a single day; they
    concern a sustained campaign of unconstitutional behavior by the
    same actors currently demanding a stay. These claims will not be
    resolved by the state proceeding, and Defendants' attempt to sweep
    them into a blanket stay would unjustly delay matters unrelated to
    the criminal case.

16. Furthermore, to the extent Defendants rely on *Heck v. Humphrey*,
    512 U.S. 477 (1994), to suggest Plaintiff's civil claims must be
    stayed or dismissed, such reliance is misplaced. *Heck* bars only those
    civil claims that, if successful, would necessarily imply the invalidity
    of a criminal conviction. Here, Plaintiff asserts multiple claims
    including Monell liability, warrantless phone search in violation of
    *Riley v. California*, and suppression of exculpatory material  that
    stand independent of any eventual verdict in the parallel criminal
    case. These claims arise from conduct both prior to and separate
    from the arrest, and thus *Heck* does not apply.

### III. LEGAL STANDARD

17.  Ex parte applications are reserved for "extraordinary circumstances."
     Under Local Rule 7-19 and the Court's standing orders, an ex parte
     application must demonstrate (1) that the moving party will be irreparably
     prejudiced if the motion is heard according to regular noticed motion
     procedures, and (2) that the party made reasonable and good faith efforts
     to meet and confer, or that such efforts would be futile.

18.  A stay of proceedings is an "extraordinary remedy" that courts should
     grant only in rare circumstances where the interests of justice so require.
     See *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The party requesting
     the stay "must make out a clear case of hardship or inequity in being
     required to go forward." Id.

19.  Moreover, Local Rule 7-4 makes clear that the Court may decline to
     consider any motion that fails to meet the requirements of L.R. 7-3
     through 7-8. This includes the mandatory meet and confer obligation
     under L.R. 7-3, which requires parties to "discuss thoroughly... the
     substance of the contemplated motion and any potential resolution" before
     filing. Here, no such discussion occurred. Counsel ignored Plaintiff's
     requests for time to confer and instead proceeded with a premature filing,
     in violation of these procedural rules.

20.  The Application also fails to identify any irreparable prejudice that would result from waiting for a regularly noticed motion. As such, it does not qualify for ex parte treatment under L.R. 7-19, nor does it merit relief under *Landis*.

21.  *As a self-represented litigant, Plaintiff's filings are "held to less stringent standards than formal pleadings drafted by lawyers."*

*Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

*See also Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (liberal construction applies at all stages of litigation, including Rule 12(b)(6)).

## IV. PRESERVATION CONCERNS AND IMPROPER SEIZURE OF EVIDENCE

22.  One of Plaintiff's primary concerns with the proposed stay is the continued withholding of his personal cell phone, which was seized by law enforcement at the time of his arrest on March 10, 2025—two days after the alleged incident and without probable cause. The seizure was not conducted by Detective McCormick, but Plaintiff has a credible witness—a witness employed within the department—who indicated that McCormick wanted the phone seized despite not being assigned to the

case. This witness will be identified at the appropriate time during

discovery.

23.    On March 11, 2025, Plaintiff attempted to retrieve the phone and was

informed by Shelly Soto, a civilian dispatcher and not a sworn officer, that

the phone could not be released. The phone was later unlawfully powered

on and pinged on March 14, 2025, before any warrant was issued,

indicating that it had been removed from secure evidence storage and

accessed without judicial authorization. This constitutes a direct violation

of *Riley v. California*, 573 U.S. 373 (2014), which held that law

enforcement must obtain a valid warrant before accessing digital contents

of a cell phone. This event is confirmed by internal location data from

Apple's Find My iPhone tracking system. See **Exhibit A** (phone log

evidence).

24.    The warrant for the phone was issued three days later on March 17, 2025.

Notably, the warrant did not list Plaintiff's phone number—it listed his

wife's. See **Exhibit B** (phone warrant) No evidence has ever been

presented to justify the seizure, retention, or the invasive access of the

device. Plaintiff has not been able to access the phone since the arrest, and

discovery materials confirm that it has not been used. Its continued seizure

poses a serious risk of spoliation and continues to violate *Riley* by unlawfully depriving Plaintiff of control over his personal digital effects.

25. Moreover, this sequence of events creates two independent violations of *Riley v. California*: first, the warrantless seizure of the phone on March 10; and second, the week-long delay in securing a warrant before powering it on and accessing it. *Riley* demands both immediacy and judicial authorization, neither of which occurred here.

26. Furthermore, the defective warrant was not served until nearly a month later, when Officer Ibarra appeared at Plaintiff's workplace to execute it—despite living directly behind Plaintiff and knowing his residence. Plaintiff notes that on body-worn camera (BWC) footage, the alleged victim specifically requested that officers not contact Plaintiff at work. Yet, Ibarra deliberately waited 30 days to use the warrant in a public and humiliating fashion, appearing in uniform at Plaintiff's place of employment and exacerbating an already coercive and retaliatory pattern of behavior. This late, theatrical service of a defective warrant constitutes an additional *Riley* violation and demonstrates intentional misconduct.

27. On April 14, 2025, Plaintiff sent two formal spoliation notices and litigation hold letters to the City and its Police Department, warning that

failure to preserve this evidence would be treated as intentional

misconduct. See **Exhibit C** (Litigation Hold Notice).

28.    The following morning, on April 15, 2025, Detective McCormick

positioned himself directly across the street from Plaintiff's workplace.

Plaintiff, who had his back turned to the street, discreetly captured an

image of McCormick and two other officers through the reflective glass as

he entered the building around 7:55 AM. See **Exhibit D** (photograph).

Plaintiff did not engage, alert, or otherwise provoke the officers; he simply

documented their presence. Given the proximity to the litigation hold and

the unexplained surveillance-like behavior, Plaintiff intends to request an

in-camera review to determine whether unlawful surveillance or

intimidation occurred in response to the preservation notice.

29.    The night before this encounter—on March 14, 2025—Plaintiff observed

what appeared to be a marked patrol unit idling near the exit of The Prime

Leaf. At the time, Plaintiff did not assign any significance to the vehicle's

presence. It was only in hindsight, after witnessing Detective McCormick

outside his workplace the next morning, that Plaintiff recognized this as a

potential early sign of targeted surveillance. This adds further weight to

Plaintiff's concern that the seizure and retention of his phone is not

investigatory, but part of a broader pattern of retaliatory conduct.

30. On April 18, 2025, at approximately 12:21 PM, Detective McCormick returned to Plaintiff's workplace again  See **Exhibit E** (still from video) this time to pull over a civilian vehicle directly in the parking lot adjacent to Plaintiff's car. He pulled the car over approximately six feet behind Plaintiff's parked vehicle. Plaintiff captured this encounter on video, which he intends to submit in discovery at the appropriate time. While the pretext for the traffic stop is unclear, Plaintiff raises serious questions about the legitimacy of the stop and will request in discovery a review of the body-worn camera footage or dispatch logs to determine whether any valid traffic infraction occurred.

31. Furthermore, while answering an email to this very motion outside at work On March 17th around 12 pm, Plaintiff was approached by a civilian who wanted to speak to him about a friend attempting to reach out regarding Officer McCormick. This is not an isolated occurrence. On three separate occasions, Plaintiff has been approached and handed contact information from community members desperately seeking accountability for Officer McCormick's conduct. These are not random complaints they are consistent stories from citizens alleging targeted harassment and civil rights violations by this officer. As a former city council candidate, Plaintiff was subjected to a flood of such stories during

his campaign. The pattern is undeniable. Residents are scared, voiceless, and increasingly turning to Plaintiff for help.

32.  Officer McCormick is not a typical officer. He has become a known symbol of community intimidation. A stay would effectively remove the court's ability to intervene in ongoing or future acts of retaliation. The risk of further escalation especially with McCormick's documented behavior is very real. Granting a stay now would embolden further misconduct and deprive the community of the only current legal mechanism available to restrain him.

33.  The phone has now been held for more than four months. This prolonged retention, absent use or progress, appears arbitrary and punitive. Many law enforcement agencies across California typically return phones within a week unless they are actively being forensically examined. No such justification has been provided here. The only apparent use for continued seizure is strategic: to deprive Plaintiff of the ability to recall events and establish timelines critical to his case. The cell phone is not being retained as evidence it is being withheld as a litigation tactic. This sustained and unjustified deprivation further violates *Riley*, which underscores the constitutional requirement for proportionality and judicial oversight in digital searches and seizures.

34. Because Plaintiff believes the phone contains exculpatory evidence, including Brady material, its seizure and ongoing retention without explanation raise significant due process concerns. Moreover, any stay that halts proceedings without addressing this issue would permit further erosion of critical evidence, and potentially allow time for deletion, overwriting, or internal sharing that undermines chain of custody.

35. A stay cannot be imposed where the Defendant refuses to return key evidence, fails to provide any justification for continued possession, and has already demonstrated mishandling. Plaintiff requests that if any stay is considered, it must be conditioned upon either the immediate return of Plaintiff's phone or a detailed preservation and access protocol to ensure Brady compliance.

36. McCormick's conduct is not only retaliatory, but emblematic of systemic failure. Plaintiff has multiple sources whose identities will be withheld confirming that McCormick was let go from Escondido Police Department in 2005 due to allegations of police brutality. While the City of Blythe have refused to confirm his employment misconduct history, public reporting databases reveal that both Escondido PD and Blythe PD are out of compliance with Brady disclosure standards. See **Exhibits F and G.**.

(https://giglio-bradylist.com/individual/kevin-joseph-%20mccormick )

(https://giglio--bradylist-com.webpkgcache.com/doc/-/s/giglio-bradylist.com/individual/kevin-joseph-%20mccormick-0) McCormick's pattern of intimidation, coupled with a questionable personnel history, further supports Plaintiff's concern that the phone is being leveraged not for investigatory purposes, but to suppress and obstruct litigation.

37.    Based on the dangerous nature of Detective McCormick's ongoing conduct and the fact that he is a named defendant for assault, illegal seizure, warrantless surveillance, and retaliation there is an extreme and credible risk of spoliation if proceedings are stayed. McCormick is the individual who allegedly pushed for the seizure of Plaintiff's phone, who later appeared outside Plaintiff's workplace multiple times, and who seems to be operating with impunity. Plaintiff has identified repeated violations of *Riley v. California* throughout the seizure timeline: (1) warrantless seizure on March 10; (2) unauthorized pinging before the warrant was issued; (3) warrant delay of seven days with no exigency; (4) theatrical and untimely warrant service nearly a month later; and (5) continued four-month deprivation of access with no justification. All of these facts, in totality, illustrate that this is not a routine matter, it is a

pattern of retaliation, and it requires immediate judicial oversight, not a procedural pause.

38.    The City could have avoided this entire dispute by simply returning Plaintiff's property. Had the phone central to multiple *Riley* violations not been withheld without justification, Plaintiff would have had no basis to object to the stay. In fact, the parties could have stipulated to a temporary stay by tomorrow evening. Instead, the City has chosen to retain the very evidence that exposes its misconduct while asking the Court to pause proceedings. Plaintiff will not consent to a stay designed to shield unlawful behavior from judicial scrutiny.

## V. DELAY HARMS PLAINTIFF AND REWARDS RETALIATION

39.    A stay at this stage would not promote fairness or efficiency. It would reward misconduct. The City of Blythe is asking this Court to freeze the case after already unleashing a pattern of retaliation against Plaintiff—unlawful seizure, suppression of exculpatory evidence, and multiple acts of intimidation by uniformed officers.

40.    Plaintiff has followed every rule. He preserved evidence. He served every defendant. Meanwhile, the City has ignored preservation demands, stonewalled discovery, and escalated contact through its officers.

41. This case is not disruptive. It is necessary. Plaintiff's rights are being violated in real time. Every week that passes without judicial intervention, Plaintiff remains cut off from his records. He remains exposed to further intimidation. And he remains blocked from fully litigating the retaliation that has already upended his career and personal life.

42. A stay under these conditions is not neutral. It is a strategic advantage for the defendant accused of suppression. It gives them time to delay discovery, withhold key evidence, and wear down the pro se litigant trying to assert his rights in open court.

43. Plaintiff does not oppose a limited and conditioned stay if the Court believes it serves judicial economy. However, Plaintiff respectfully requests that any stay be expressly conditioned upon the following: (1) the immediate return of Plaintiff's seized phone or, alternatively, (2) the entry of a preservation and access protocol that ensures compliance with *Brady v. Maryland*, avoids further *Riley* violations, and protects Plaintiff's ability to prosecute this action. Without these conditions, a stay would further prejudice Plaintiff and effectively reward the City for initiating proceedings without genuine urgency or lawful evidence handling.

## VI. Younger Abstention Is Inapplicable Due to Retaliatory Prosecution and Bad Faith Conduct

44.    While Defendants rely on *Younger v. Harris, 401 U.S. 37 (1971)*, to argue for abstention, that doctrine is not absolute. Younger abstention does not apply where extraordinary circumstances exist, namely where the prosecution is brought in bad faith, for purposes of harassment, or under retaliatory pretext. See Mann v. Jett, 781 F.2d 1448, 1449 (9th Cir. 1986) (Younger abstention is inappropriate where the prosecution is conducted in bad faith or as harassment). See also *Battenburg v. Nevada*, No. 3:21-cv-00093-MMD-CLB, 2021 WL 5998497, at *3 (D. Nev. Dec. 20, 2021). (Finding Younger abstention inapplicable where there was evidence of retaliatory animus by government actors).

45.    This case presents precisely that kind of retaliatory abuse. Plaintiff had previously filed numerous misconduct complaints, made internal affairs requests, and publicly criticized the department during his City Council campaign months earlier. In late October 2024, the Chief of Police contacted Plaintiff's employer referencing his candidacy. While no arrest occurred during the March 8 incident and no immediate threat was perceived by responding officers, Plaintiff was arrested two days later while at work. That next month officers were photographed surveilling Plaintiff's workplace without lawful purpose as shown in Exhibit D.

46. Further, Plaintiff has already identified critical Brady material and suppression concerns surrounding the March 2025 arrest. Officers conducted a cell phone ping before a warrant was issued as shown in **Exhibit A.** Key calls between Erica and Sergeant Burt mocking Plaintiff and acknowledging bias have not been disclosed in discovery. Body worn camera and call logs are incomplete or missing despite preservation demands. The arrest was not made contemporaneously with the incident which undermines any public safety rationale.

47. These facts go beyond mere disagreement with probable cause. They reflect a pattern of retaliatory policing intended to silence a political critic and justify a narrative already in motion. Where a criminal prosecution is being used as a tool of retaliation, Younger abstention does not apply. See Lewellen v. Raff, 843 F.2d 1103, 1112 (8th Cir. 1988) (Bad faith prosecution bars Younger abstention).

48. Because the criminal prosecution here is not being pursued in good faith but rather as part of a coordinated campaign of political retaliation and evidence suppression abstention is improper.

**Dated: July 17, 2025**

Respectfully submitted,


**/s/ Garrett Scott McKean**

Garrett Scott McKean

Plaintiff, Pro Se